# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 27, 2013 Session

## STATE OF TENNESSEE v. TONY DIXON

### Direct Appeal from the Criminal Court for Knox County
#### No. 93787A     Bob R. McGee, Judge

---

### No. E2011-00736-CCA-R3-CD - Filed June 11, 2013

---

A Knox County Criminal Court Jury convicted the appellant, Tony Dixon, of attempted aggravated burglary.  The trial court sentenced the appellant as a Range I, standard offender to three years in the Tennessee Department of Correction.  On appeal, the appellant challenges the sufficiency of the evidence, the trial court's admission of hearsay evidence indicating that the victim did not consent to the appellant's entering the apartment, and the trial court's failure to instruct the jury that an accomplice's testimony must be corroborated. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

John M. Boucher, Jr., Knoxville, Tennessee, for the appellant, Tony Dixon.

Robert E. Cooper, Jr., Attorney General and Reporter, Leslie E. Price, Senior Counsel; Randall E. Nichols, District Attorney General, and Takisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The appellant's charge stemmed from his attempted entry into the habitation of Allen Young on June 1, 2009.

At trial, Knox County Emergency Community District (911) employee Michael Alan Mays testified that at 1:55 a.m. on June 1, 2009, an unidentified female made two calls to 911

regarding an apparent attempt to break into an apartment at 608 Lester Street. A recording of the 911 calls was played for the jury. The female caller told the 911 operator that "a silver car with a sun roof[,] . . . four black boys in it[,] . . . " had pulled up next to an apartment at 608 Lester Street. She said that the car's lights were off, and it had approached quietly. She saw "a little short black boy with a white shirt on [and] gloves on" try to break into the apartment by "popp[ing] a window." She said the boys had been there earlier and had pried the window open when they returned.

Knoxville Police Officer Timothy Walker testified that on June 1, 2009, he was driving on Chapman Highway in response to a "be on the lookout" or "BOLO" for a silver Volvo that had been involved in an aggravated burglary. He saw a car matching the description traveling away from the area of the reported burglary. The car was occupied by four black males. Officer Walker and another officer initiated a traffic stop, and the car stopped at a BP gasoline station. The four black males, including the appellant and his brother, who was the driver, exited the car. Officer Walker put the appellant in the back of his patrol car, and the appellant's brother was placed in the back of another officer's patrol car. Officer Walker confiscated a BB gun that was inside the Volvo.

Officer Walker said that he advised the appellant of his Miranda rights, and the appellant waived his rights and agreed to make a statement. The appellant told Officer Walker "that he was going to the location where they committed the crime to steal marijuana and money." The appellant said that "[t]hey used [the BB gun] as an intimidation tool in the event that they ran into the owner of the property."

On cross-examination, Officer Walker said that the BB gun was in the front passenger side of the Volvo. He did not recall questioning the other men who were in the Volvo.

Twenty-year-old Dmitri Antoine Terrell Morris, one of the appellant's co-defendants, testified that he met the appellant through Morris's cousin, Deshawn Simpson. On the evening of June 1, 2009, Morris, the appellant, the appellant's brother, and another male left Morris's house in a car. Morris and the appellant sat in the backseat. The men decided to break in the apartment of someone Morris knew. Morris said that he thought there was money in the apartment. When they arrived, the appellant got out of the car and used a crowbar to pry open one of the apartment's windows. Morris thought he heard an alarm, so the appellant got back into the car, and they drove away. They turned around and drove back to the apartment but left when a neighbor came out of a nearby house. As they drove down the street, the men saw the police. The men stopped at a gasoline station and, at the police's request, got out of the car. Morris could not recall if the police advised him of his Miranda rights. Morris said that the police questioned Morris, and he admitted his participation in the crime.

Morris acknowledged that he pled guilty to aggravated burglary and received a sentence of four years for his involvement in the attempted burglary. At the time of the incident, Morris was serving a probationary sentence for another aggravated burglary. His probation was revoked, and a four-year sentence was imposed. At his guilty plea hearing, he also pled guilty to possession of marijuana with the intent to distribute and received a two-year sentence. The foregoing sentences were ordered to be served consecutively for a total sentence of ten years. The plea agreement provided that the trial court would determine the manner of service of the sentences. Morris said that he was told at his sentencing hearing that he needed to testify truthfully against his co-defendants.

On cross-examination, Morris acknowledged that, as a Range I, standard offender, he had faced a maximum sentence of twelve years, but his plea agreement provided for an effective ten-year sentence. He said that he did not know that he was required to testify against his co-defendants until his sentencing hearing. When asked if the State would have agreed to a guilty plea without Morris's testifying against his co-defendants, Morris replied, "You never know."

Knoxville Police Sergeant Scott Noe testified that around 2:00 a.m. on June 1, 2009, he was called to the scene of an aggravated burglary at 608 Lester Avenue. As he drove down Henley Street and Chapman Highway toward the crime scene, he heard a description of the suspect vehicle over his police radio. The report further stated that another officer had stopped a vehicle matching the description. Sergeant Noe went to the scene of the traffic stop then proceeded to 608 Lester Avenue.

Sergeant Noe said that when he arrived at the crime scene, he spoke with two witnesses, a male and a female. The female witness said that she had been startled by bright headlights shining in the window of her residence and by the sound of a loud muffler. When she looked outside, she saw someone get out of a car and heard the person loudly knock on the door of 608 Lester Avenue. The car left but thereafter returned with its headlights off. A suspect exited the vehicle and stood by one of the apartment's windows. The female witness heard "a loud popping noise" that she thought had been made by "a crowbar or something." The car drove away and returned again, with its headlights still off. "[O]ne person got out and went to the window and another person was getting out and walking towards the window while one was already at the window of the apartment." The "male witness" opened his door and said, "'What's up,'" and the suspects got back into the car, and the car sped away. Based upon the witness statements, Sergeant Noe believed the suspects had broken into the apartment or had tried to break into the apartment.

Sergeant Noe said that there were no windows at the rear of the apartment, and there was one door and one window at the front of the apartment. The window was not locked,

but Sergeant Noe could not recall if the window was open. Sergeant Noe entered the apartment through the window and opened the front door to let his partner, Officer Hopkins, inside. They searched the apartment to determine if an injured victim was inside. As Sergeant Noe walked through the kitchen, he saw a plate with a razor blade on it; a large, ceramic coaster; and a spoon. The items were coated with a substance that appeared to be crack cocaine residue. The stovetop and counters were also covered with crack cocaine residue. After finding no one inside the apartment, Sergeant Noe and Officer Hopkins went outside. Sergeant Noe stayed to secure the crime scene, and Officer Hopkins took the two witnesses to the scene of the traffic stop, where they identified the people in the vehicle.

Knoxville Police Officer John Holmes testified that on June 1, 2009, he was called to a traffic stop at the BP gasoline station located at Chapman Highway and Woodlawn. When he arrived, he saw the appellant in the backseat of a patrol car. The appellant's brother was in the backseat of another patrol car. Officer Holmes advised the appellant of his Miranda rights, and the appellant said he understood his rights. The appellant told Officer Holmes that he and the other men in the car had chosen to burglarize Allen's apartment because a black male in his mid 20s named Henry or Herbie told the appellant that there was marijuana in the apartment. The appellant denied that they would have used the BB gun to rob Allen if he had been at home.

Officer Holmes said that "[t]he location on Lester street was a location we had been looking at for previous drug complaints." After a search warrant for Allen's apartment was obtained, Officer Holmes and Officer Shaffer looked inside and found marijuana "stems," a razor blade and a plate coated in crack cocaine residue, and a spoon used to mix crack cocaine during the manufacturing process. Additionally, Officer Shaffer found "quite a decent amount" of crack cocaine inside the microwave oven.

On cross-examination, Officer Holmes acknowledged that he had not seen any damage to the window. He explained, however, that he was not the initial officer on the scene and did not inspect the window.

The State rested its case-in-chief, and the defense elected not to put on proof. The jury found the appellant guilty of attempted aggravated burglary, and the trial court imposed a three-year sentence. On appeal, the appellant challenges the sufficiency of the evidence, the trial court's "overruling [his] objection to evidence alluded to during trial as to whether or not the alleged victim in this case did not consent to [the appellant's] entering [the victim's] apartment," and the trial court's failure to instruct the jury on the need for corroboration of an accomplice's testimony.

## II. Analysis

A. Timeliness of Motion for New Trial

Initially, we note that the State contends that the appellant has waived all of his issues, except for the sufficiency of the evidence, by failing to raise them in a timely motion for new trial. Rule 33(b) of the Tennessee Rules of Criminal Procedure provides that in a case tried by a jury, a motion for new trial must be made in writing or reduced to writing within thirty days of the "date the order of sentence is entered." This provision is mandatory, and the trial court has no authority to extend the time for filing. Tenn. R. Crim. P. 45(b); State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997). An untimely motion for new trial "not only results in the appellant losing the right to have a hearing on the motion, but it also deprives the appellant of the opportunity to argue on appeal any issues that were or should have been presented in the motion for new trial." Martin, 940 S.W.2d at 569.

The record reflects that the appellant was found guilty on February 1, 2011. After a sentencing hearing was held on March 10, 2011, the judgment of conviction was entered the same day. On April 14, 2011, the appellant filed a motion for new trial, which was beyond the thirty-day time limit for filing such motions. This court has previously cautioned, "Unlike the untimely filing of the notice of appeal, this court does not have the authority to waive the untimely filing of a motion for new trial." State v. Patterson, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997). We conclude that, at the hearing on the motion for new trial, the trial court correctly determined that the motion for new trial was untimely. "If a motion for new trial is not timely filed, all [the appellant's] issues are deemed waived except for sufficiency of evidence and sentencing." State v. Bough, 152 S.W.3d 453, 460 (Tenn. 2004) (citing Tenn. R. App. P. 3(e); Martin, 940 S.W.2d at 569).

B. Plain Error

The appellant did not respond to the State's contention that the motion for new trial was untimely filed, nor did he ask that the issues be addressed as plain error. Regardless, we conclude that the appellant is not entitled to review. Tennessee Rule of Appellate Procedure 36(b) provides that "[w]hen necessary to do substantial justice, [this] court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." See also Tenn. R. Evid. 103(d). We may only consider an issue as plain error when all five of the following factors are met:

> a) the record must clearly establish what occurred in the trial court; b) a clear and unequivocal rule of law must have been breached; c) a substantial right of the accused must have been adversely affected; d) the accused did not waive the issue for

tactical reasons; and e) consideration of the error is "necessary to do substantial justice."

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); see also State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the Adkisson test for determining plain error). Furthermore, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (internal quotations omitted).

The appellant first complains that "the trial court erred in overruling [his] objection to evidence alluded to during trial as to whether or not the alleged victim in this case did not consent to [the appellant] entering [the victim's] apartment." The appellant's entire argument on this issue is as follows:

> Rule 804(a) of the Tennessee Rules of Evidence allows for a Hearsay Exception when the "declarant" is absent [sic] from the hearing and the proponent of a statement has been unable to procure the declarent's [sic] attendance by process.

> There is nothing in the Court's record to indicate that the victim/witness in this matter was ever issued with a subpeona [sic] to testify, nor is there any evidence of any steps taken by the Government to secure his presence. Although the grand jury process is "secret," and the defense rarely has an opportunity to find out what took place at a grand jury proceeding, it is the defense's assertion that the complaining witness never appeared before the grand jury before this matter was handed down via presentment. A preliminary hearing on this matter never took place, and the defense was never afforded the opportunity to cross-examine this witness either.

The appellant's brief is totally devoid of any citation to the specific evidence to which the appellant objects. Generally, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); see also Tenn. R. App. P. 27(a)(7). The appellant appears to argue that in order to prove its case, the State was required to have the victim present to testify that the appellant did not have consent to enter the apartment. However, such direct evidence of lack of consent is not required. See State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011). Because the Adkisson factors have not been met, we must conclude that the appellant is not entitled to plain error relief on this basis.

Second, the appellant complains about the trial court's failure to instruct the jury on the need for corroboration of an accomplice's testimony. The appellant's entire argument on this issue is as follows:

> Mr. Morris plead [sic] guilty to aggravated burglary on this case. He is an accomplice. However, the court failed to instruct the jury on accomplice testimony as required by law and the facts of this case. T.P.I.-Crim[.] 42.09 should have been given and it was not. The facts are not disputed as to Mr. Morris' participation in the alleged crime.

Once again, we have found the appellant's brief wanting. He has failed to properly cite to the record or to properly cite authorities supporting his proposition.[1] See Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7). Regardless, we note that Morris, as a co-defendant, was an accomplice as a matter of law and that "[t]he trial court has an obligation to properly instruct the jury." State v. Robinson, 239 S.W.3d 211, 225, 228 (Tenn. Crim. App. 2006). We acknowledge that the trial court did not give a jury instruction regarding the need for an accomplice's testimony to be corroborated. However, this court has held that a trial court's failure to give an accomplice instruction was harmless when there was sufficient corroboration of the accomplice's testimony. State v. Ballinger, 93 S.W.3d 881, 888 (Tenn. Crim. App. 2001). In the instant case, we conclude that there was sufficient corroboration, as we will explain *infra*. See State v. Steven Dale Hill, No. M2012-00982-CCA-R3-CD, 2013 WL 1092724, at *10 (Tenn. Crim. App. at Nashville, Mar, 15, 2013). Therefore, we conclude that the appellant is not entitled to plain error relief on this issue.

## C. Sufficiency of the Evidence

As his final issue, the appellant contends that the trial court should have granted a judgment of acquittal because the evidence was insufficient to sustain his conviction. The State disagrees. "The standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000). Therefore, we will address the appellant's complaint as a challenge to the sufficiency of the evidence.

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to

---

[1]We further note that the appellant failed to include a statement of issues in his brief as required by Tennessee Rule of Appellate Procedure 27(a)(4).

this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Our supreme court has held that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of the evidence." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011).

The appellant was convicted of attempted aggravated burglary. An aggravated burglary occurs when a person, without the effective consent of the property owner, enters a habitation, such as a person's residence, and commits or attempts to commit a felony, theft, or assault. See Tenn. Code Ann. §§ 39-14-401(1)(A), -402(a)(1), and -403(a). A criminal attempt occurs when a person acting with the kind of culpability otherwise required for the offense:

> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(1)-(3).

In the light most favorable to the State, the proof at trial revealed that on the night of the crime, Morris; the appellant; the appellant's brother, Jamal; and a fourth male drove a silver Volvo to the victim's apartment to burglarize it for money or marijuana. The appellant attempted to pry open the apartment's window with a crowbar. When Morris thought he heard an alarm, the men drove away from the area. Witnesses reported the incident to 911 and described the getaway vehicle. Shortly thereafter, police stopped a silver Volvo containing the aforementioned four males. When questioned by police, the appellant admitted his involvement in the crime.

On appeal, the appellant specifically contends that Morris's testimony was insufficiently corroborated and that the State failed to establish that he did not have the victim's consent to enter the residence. Regarding corroboration, we note that "a defendant cannot be convicted upon the uncorroborated testimony of [an] accomplice[]." State v. McKnight, 900 S.W.2d 36, 47 (Tenn. Crim. App. 1994). "'The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.'" State v. Heflin, 15 S.W.3d 519, 524 (Tenn. Crim. App. 1999) (quoting State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994)). Additionally, such corroborative evidence may be direct or circumstantial. See State v. Spadafina, 952 S.W.2d 444, 450 (Tenn. Crim. App. 1996). Officer Holmes testified that the appellant admitted that he and his accomplices went to the victim's apartment to break in and take marijuana they had been told was in the apartment. Further, the appellant told Officer Walker that he and the men in the car had gone to the victim's apartment to steal marijuana and money. Sergeant Noe testified that the witnesses at the scene saw someone trying to pry open the window of the victim's apartment with a crowbar. The witnesses also saw the perpetrators driving a car that matched the description of the vehicle the appellant was in when it was stopped by police. Therefore, we conclude that Morris's testimony was amply corroborated.

Regarding consent, the appellant correctly asserts that the victim did not testify at trial. The appellant, without citation to authority, contends that "[a] jury may not be allowed to have any permissive inference to an essential element of a crime." We disagree. This court has previously held that "'elements of an offense may . . . be established by circumstantial evidence and the inferences derived from the actions of the party or parties involved.'" State v. Natayna Daemarie McCullough, No. M2011-01926-CCA-R3-CD, 2012 WL 5289589, at *12 (Tenn. Crim. App. at Nashville, Oct. 25, 2012) (quoting State v. Orlando Daniel Garcia, No. W2009-00164-CCA-R3-CD, 2010 WL 3766942, at *6 (Tenn. Crim. App. at Jackson, Sept. 28, 2010)). Regardless, in the instant case there was more than an inference of the lack of the victim's consent. The proof at trial revealed that the appellant and his co-defendants repeatedly drove to the apartment, left, and returned; that the appellant and his co-defendants approached the apartment with the car's lights off; that the appellant tried to force the

window of the apartment open with a crowbar; and that the appellant and his co-defendants fled the area when they were spotted by witnesses. Officer Walker testified that the appellant said he and his accomplices were going to steal money and drugs from the victim's apartment and that they planned to use a BB gun "as an intimidation tool in the event that they ran into the owner of the property." Additionally, Morris testified that they had intended to break in the victim's apartment to steal money. We conclude that there was sufficient proof at trial for a reasonable jury to find the appellant guilty of attempted aggravated burglary.

### III. Conclusion

In sum, we conclude that the appellant waived all of his issues except sufficiency of the evidence by filing an untimely motion for new trial and that he is not entitled to plain error relief on the waived issues. Additionally, we conclude that there was sufficient evidence to sustain his conviction. Therefore, we conclude that the judgment of the trial court is affirmed.

_____
NORMA McGEE OGLE, JUDGE